UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND NEWKIRK, individually and )
on behalf of all others similarly situated, )
)
    Plaintiff, )
)
v. )   CASE NO.:
)
JP MORGAN CHASE BANK, NA., )
)   **JURY DEMANDED**
    Defendant. )

## COMPLAINT - CLASS ACTION

Plaintiff, Raymond Newkirk, individually and on behalf of all others similarly situated, brings this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for violation by the Defendant, JP Morgan Chase Bank, NA.

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §1337, and 47 U.S.C. § 227 (TCPA).

2. Venue in this District is proper because the acts occurred here, Plaintiff resides here, and Defendant transacts business here.

### PARTIES & FACTS

3. Plaintiff Raymond Newkirk is, and always mentioned herein was, an individual citizen of the State of Florida, who resides in St. Petersburg Florida, which is located in the Middle District of Florida.

4. JP Morgan Chase Bank, NA. is a national bank headquartered at 270 Park Avenue, New York, NY 10017.

5. Defendant Chase is authorized to conduct, and so regularly conducts, business in the State of Florida.

6. Plaintiff is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

7. Chase is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

8. Plaintiff has a mortgage which is serviced by Chase.

9. In or around January 2014, Chase began placing calls to Plaintiff's cellular telephone number using a prerecorded voice message and an automated telephone dialing system.

10. On or around March 12, 2014 Chase called Plaintiff's cellular telephone number.

11. During this communication, Plaintiff advised Chase that they were calling his cellular telephone number and requested that Chase cease placing calls to his cellular telephone number.

12. Despite this notice, Chase called Plaintiff on his cellular telephone number on April 15, 2014.

13. During this communication, Plaintiff again requested that Chase cease placing calls to his cellular telephone number.

14. Despite this notice, Chase placed repeated calls to Plaintiff's cellular telephone number using a prerecorded voice message and automated telephone dialing system, including calls on May 19, 2014, June 18, 2014, and July 19, 2014.

15. On November 14, 2014 Chase called Plaintiff's cellular telephone number.

16. During this communication, Plaintiff again requested that Chase cease placing calls to Plaintiff's cellular telephone number.

17. Despite this notice, Chase placed additional calls to Plaintiff's cellular telephone number on at least November 21, 2014 and December 27, 2014.

18. On January 14, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

19. During this communication, Plaintiff again notified Chase to cease placing calls to his cellular telephone number.

20. Despite this notice, Chase placed additional calls to Plaintiff's cellular telephone number on at least February 19, 2015 and March 20, 2015.

21. On April 8, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

22. During this communication, Plaintiff again notified Chase to cease placing calls to his cellular telephone number.

23. On April 13, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

24. Despite this notice, Chase placed additional calls to Plaintiff's cellular telephone number on at least April 23, 2015 and April 27, 2015.

25. On May 13, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

26. During this communication, Plaintiff again notified Chase to cease placing calls to his cellular telephone number.

27. Despite this notice, Chase placed additional calls to Plaintiff's cellular telephone number on at least May 20, 2015, June 19, 2015, and June 22, 2015.

28. On July 13, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

29. During this communication, Plaintiff again notified Chase to cease placing calls to his cellular telephone number.

30. Despite this notice, Chase placed additional calls to Plaintiff's cellular telephone number on at least July 17, 2015, July 24, 2015, August 21, 2015, and September 22, 2015.

31. On October 16, 2015, Chase again placed a call to Plaintiff using a prerecorded voice message and automatic telephone dialing system.

32. During this communication, Plaintiff again notified Chase to cease placing calls to his cellular telephone number.

33. During this communication, Defendant notified Plaintiff that he would need to submit a written request on a specific form in order to stop Chase from calling. This was the first time Chase notified Plaintiff that Chase required him to fill out a form or that a form was even available, despite his frequent past requests for Chase's calls to cease.

34. On October 19, 2015 Chase mailed Plaintiff a letter instructing him to submit a Stop Calls Request form.

35. Plaintiff completed and returned the Request to Stop Calls form on or around October 27, 2016.

36. Despite Plaintiff's repeat verbal notice and completing the requested form, Chase continued to place calls to Plaintiff's cellular telephone number on at least December 17, 2015, December 21, 2015, and December 23, 2015.

37. At all times relevant herein, Plaintiff has been the user, and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

38. Chase placed all of the above referenced calls to Plaintiff's cellular telephone number using an "automatic telephone dialing system" ("ATDS"), as that term is defined by 47 U.S.C. § 227 (a)(1), meaning it had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, and to place telephone calls to Plaintiff's cellular telephone. For example, on numerous occasions Plaintiff picked up the phone and there was a pause prior to anyone coming onto the line.

39. Several of the calls placed to Plaintiff's cellular telephone number were placed using an artificial and pre-recorded voice message. For example, on numerous occasions when Plaintiff picked up his cell phone a pre-recorded message asked him to wait for the next available representative prior to a live person coming on the phone.

40. Plaintiff repeatedly revoked any consent which Chase may have had to place calls to Plaintiff's cellular telephone number using an ATDS or an artificial or pre-recorded voice message.

### THE TCPA

41. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

42. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

43. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

44. In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulation Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R.14014, 14115, ¶ 131 (July 3, 2003).

45. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

46. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

## COUNT I: VIOLATION OF THE TCPA

47. Plaintiff restates each of the factual allegations in all other paragraphs as if full stated herein.

48. This claim is for violation of the TCPA by Chase.

49. The telephone calls from Chase to Plaintiff's cellular telephone number were made using an ATDS.

50. The subject calls were placed using a predictive dialer.

51. Many of the subject calls were placed using an artificial or pre-recorded voice message.

52. Chase placed calls to Plaintiff at a telephone number assigned to a cellular telephone service.

53. The telephone calls Chase placed to Plaintiff were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

54. Chase made unsolicited telephone calls to the wireless telephone number of plaintiff and the other members of the class using a pre-recorded voice and or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

55. At the time, Chase placed the phone calls alleged herein, Chase did not have consent to do so because Plaintiff had revoked any consent which may have existed.

56. Chase has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".

57. As a result of Chase's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

58. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Chase's violations of the TCPA in the future.

## CLASS ALLEGATIONS

59. Plaintiff restates each of the allegations in all other paragraphs as if full stated herein.

60. Plaintiff, individually and on behalf of all others similarly situated, bring the above claims on behalf of a Class.

61. The Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Chase placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Chase did not have express consent to call said cellular telephone number.

And the following sub class:

*Revocation Sub-Class*
(1) All persons in the United States (2) to whose cellular telephone number (3) Chase placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) after that person had instructed Chase to cease calls to that number.

62. Chase has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste time.

63. Plaintiff represents and is a member of the Class and each subclass. Excluded from the Class are Defendant and any entities in which Chase has a controlling interest, Chase's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

64. Plaintiff does not know the exact number of members in the Class, but based upon the size, national scope of Chase's business, and the use of automated software to make the debt collection calls, Plaintiff reasonably believes that the class members' number at a minimum in the thousands.

65. Plaintiff and all members of the Class have been harmed by Chase's actions.

66. This Class Action Complaint seeks money damages and injunctive relief.

67. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Chase.

68. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

    a.    Whether Chase engaged in a pattern of using an ATDS to place calls to cellular telephones;

    b.    Whether Chase's dialer delivers pre-recorded messages to cellular telephones;

    c.    Whether Chase's conduct was knowing or willful;

    d.    Whether Chase's actions violated the TCPA; and

69.    As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

70.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

71.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Chase to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Chase is small because the statutory damages in an individual action for violation of the TCPA is small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

72.    Chase has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole

appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and favor of the Class, and against Chase for:

1. A declaration that Chase's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

2. A declaration that Chase used an ATDS to call the Plaintiff;

3. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that Plaintiff is not called in the future;

4. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that Plaintiff is not called in the future;

5. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

6. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

7. An award of actual damages;

8. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

9. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

10. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

11. Attorney's fees, litigation expenses and costs of suit; and

12. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Respectfully submitted,

/s/ William Peerce Howard
William Peerce Howard (FBN 0103330)
Amanda J. Allen (FBN 098288)
THE CONSUMER PROTECTION FIRM
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: 813-500-1500
Facsimile: 813-435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

Keith J. Keogh (FBN 126335)
KEOGH LAW, LTD
55 W. Monroe St, Suite 3390
Chicago, IL 60603
312-726-1092
312-726-1093 (fax)
Keith@KeoghLaw.com

*Attorneys for Plaintiff RAYMOND NEWKIRK*